Charles James **WIGGINTON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 37645.

Court of Criminal Appeals of Texas.

Jan. 27, 1965.

Paul W. Leech, Grand Prairie, Emmett Colvin, Jr., Dallas (on appeal only), for appellant.

Henry Wade, Dist. Atty., Tom Reese, James Zimmerman and W. John Allison, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is burglary; the punishment enhanced by two prior convictions for felonies less than capital, life imprisonment in the state penitentiary.

The state's evidence adduced from the witness, Floyd Davis, reflects that on March 17, 1964, Mr. Davis was the owner and in possession of a certain place of business known as the Sportsdrome Speedway in the County of Dallas, Texas, and that this place of business consisted in part of a business house, a concession stand stocked with some foodstuffs and cooking equipment and a race track. At 6 p. m. on March 16, 1964, he checked the lock on this business house, and it was secure, being locked with a padlock and hasp. Mr. Davis testified that he had not given anyone permission to break into and enter the building and remove any of the property contained therein. The door to the building was held shut with a spring, and anyone entering thereby would have to pull on the door to enter. On March 17, 1964, around 1 p. m. and immediately after the departure of appellant and his three companions from the business house in question, Davis and a friend, Mr. Veorster, discovered the lock to the door had been pryed off and "busted". He noticed some meat had been removed from the freezer inside the building and some kitchen utensils along with the meat had been placed on top of the freezer. These items had not been so located at 6 p. m. March 16, 1964. The meat from the freezer still had frost on it, and the frost had not begun to melt, although the temperature was about 70° F. The appellant was identified as one of the men he saw at the scene of the crime. R. G. Veorster testified he saw four men in a Mercury automobile drive up to said business house and leave their car, and he went to investigate. When he arrived at the building, some 200 yards distant, he saw three men inside the building and appellant standing outside with his head sticking in the door. Mr. Veorster identified appellant. When asked what he was doing, appellant answered "nothing", and then Floyd Davis arrived and appellant and his three companions drove away in their car. He and Floyd Davis looked inside the building and discovered that some meat had been removed from the freezer and left on top of it. He and Floyd Davis then pursued appellant and stopped the car appellant was in and asked the occupants for identification and none was offered. Shortly thereafter, appellant and his companions *"took off"* in their car, *real fast*, at the direction of appellant. Mr. Veorster further related that he had considerable difficulty in stopping the car the second time, and that the driver thereof would not stop until it became necessary to display a pistol which he had brought with him for the purpose of target practice at the gun range on the Sportsdrome Speedway.

Veorster and Davis then contacted the Grand Prairie Police Department who came out and took the four persons into custody.

The state adduced testimony from an Assistant District Clerk of Dallas County establishing from the criminal minutes of the District Courts the two prior convictions. A fingerprint expert established the identity of appellant by his expert testimony.

The trial court charged the jury upon the law of principals and upon circumstantial evidence. No objections nor exceptions were taken to the court's charge.

We find the evidence sufficient to sustain the jury's verdict.

Appellant urges in his brief and oral argument as error, the sole contention that when the indictment alleging the two prior felony convictions was read to the jury and proof thereon was heard by the jury prior to a finding of guilt upon the primary offense that he was denied the right to a fair and impartial trial, guaranteed him under the Constitution of the United States and various amendments thereto.

We observe that appellant made no objection to the reading of the counts in the indictment alleging the prior convictions, to the jury.

This precise question has been before this Court many times. Each time the contention here made by appellant has been denied.

We again, here and now, once more find such contention without merit. Redding v. State, 159 Tex.Cr.R. 535, 265 S.W.2d 811, cert. denied, 348 U.S. 838, 75 S.Ct. 38, 99 L.Ed. 661; Carso v. State, Tex.Cr.App., 375 S.W.2d 297; Stephens v. State, Tex.Cr.App., 377 S.W.2d 189; Oler v. State, Tex.Cr.App., 378 S.W.2d 857; McDonald v. State, Tex.Cr.App., 385 S.W.2d 253.

We have carefully examined the various informal bills of exception and find no merit in any of them.

Finding no reversible error the judgment is affirmed.